CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 13 2005
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| WILSON H. MANUEL, JR., ) | |
| ) | Civil Action No. 5:04-cv-000111 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| JO ANNE BARNHART, ) | By: Samuel G. Wilson |
| Commissioner of Social Security, ) | United States District Judge |
| ) | |
| Defendant. ) | |

Plaintiff Wilson Manuel, Jr., brings this action challenging the final decision of the Commissioner of Social Security denying Manuel's 2003 claim for Supplemental Security Income (SSI) payments under the Social Security Act. An Administrative Law Judge (ALJ) found that Manuel is not capable of performing a full range of light work but that he is capable of performing "a significant number of jobs in the national economy." The Commissioner of Social Security adopted that opinion as her final decision. See 42 U.S.C. § 405 (g). The United States Magistrate Judge has filed a report pursuant to 28 U.S.C. § 636(b)(1)(B), recommending that the court reverse the decision and remand the case solely for the calculation of benefits. The Commissioner contends that substantial evidence supports the ALJ's determination that Manuel is not disabled and has objected to the Magistrate Judge's report. The court adopts the Magistrate Judge's report in part but vacates and remands for further consideration at the fifth step of the sequential evaluation.[1]

---

[1] The fifth and final inquiry of the evaluation is whether the claimant is able to perform other work that exists in significant numbers in the national economy and accommodates his residual functional capacity and vocational factors. 20 C.F.R. § 404.1520.

## I.

Manuel is forty-seven years of age and has a ninth grade education. His past work experience includes employment as a heavy equipment operator. Manuel claims that he has suffered from back and leg pain since 2001 and that the pain became disabling in 2003. A 2001 MRI conducted by the Winchester Medical Center revealed advanced degenerative disc disease at T11-12 with moderate focal spondylosis. The MRI also revealed a broad right posterolateral disc herniation at L5-S1, "which though broad is fairly mild" and a "milder broad posterior bulge at L4-5." Following the 2001 MRI, Manuel went to Dr. Benjamin Rezba for treatment in August 2001, and Dr. Rezba noted that Manuel's pain was primarily located in the back but also extended into the left buttock gluteal area.

On February 6, 2003, Manuel went to the Winchester Emergency Room for treatment of lower back pain. According to the emergency room report, the pain occurred spontaneously and was not in response to an injury or unusual activity. The treating physician gave Manuel medication and advised him to see his regular healthcare provider.

Manuel returned to see Dr. Rezba on March 26, 2003, at which time Manuel reported that his back pain had become severe. Upon examination, Dr. Rezba noted that when Manuel "comes up from a flexed position, he gets rippling of the back muscles from spasm[s]." Dr. Rezba diagnosed Manuel with low back pain and diabetic neuritis. Manuel underwent another MRI on March 28, 2003, which Dr. Robert J. Foust read. In comparison with the 2001 MRI, the 2003 MRI revealed a "progression of the patient's foraminal disc herniation," which "has mass effect on the dorsal root ganglion of L5." In addition, the report noted a "mild degenerative change of facets bilaterally at L3-4 through L5-S1."

2

Following the 2003 MRI, Dr. Rezba questioned whether the radicular symptoms arose from Manuel's diabetic condition or from the disk [sic]." Dr. Rezba also noted that Manuel "is not a great candidate for surgery." At a November 12, 2003, appointment, Dr. Rezba noted that Manuel was unable to work and that he thought that Manuel was "totally disabled." At a follow-up appointment on January 30, 2004, Dr. Rezba stated that Manuel's low back pain continued to progress, and that Manuel was taking Percocet, Oxycontin, and Neurontin for the pain.

On July 1, 2003, Manuel went to Dr. Thomas C. Schuler for a second opinion regarding surgical options. Dr. Schuler stated that Manuel "ambulates normally," "is able to walk on heels," and "is able to walk on toes." Dr. Schuler found no evidence of spasm over the lumbar spine, the thoracic spine, or the paraspinal areas. In addition, Dr. Schuler found no atrophy in the buttocks; however, he did find atrophy in the left calf. Dr. Schuler diagnosed Manuel's condition as lumbar disc degeneration, thoracic or lumbosacral radicultitis, low back pain, sacroilitis, and lumbar spondylosis. Dr. Schuler did not recommend surgery but did counsel Manuel to stop smoking and to "work as tolerated."

In the meantime, Dr. Laurel Tschirgi was treating Manuel for diabetes. Dr. Tschirgi stated the following on June 26, 2003: "Mr. Manuel my patient is being treated by me for his diabetes. His diabetes is not contributing to his disability at present. Dr. Rezba is treating his orthopedic problems." Also, as early as December 2002, Dr. Tschirgi stated that Manuel was in "poor compliance" with his diabetic restrictions, though he appeared to want to control it better.

At a November 21, 2003, visit to Dr. Tschirgi, Manuel reported that "his legs were aching a lot, the lateral legs with an aching and burning type of sensation....[h]e does have severe lumbar disc disease and is off work on sick leave for that." According to Dr. Tschirgi's notes, Manuel's

3

gait was a "bit slow, but otherwise normal." In her assessment, Dr. Tschirgi stated that Manuel's leg paresthesias "could be all from diabetes or a combination of that and his lumbar spine disease." During another visit on January 23, 2004, Dr. Tschirgi noted that Manuel continued to smoke despite her recommendations to the contrary and that he was eating "candy and cake and soda," even though it violated his diabetic diet.

At a February 25, 2004, visit, Manuel reported that he was in a mood of "persistent sadness and anger." Dr. Tschirgi had given Manuel Zoloft in 2003; however, there was no evidence that Manuel actually took the medication. In addition, Manuel discussed his "chronic low back pain," and though he was taking Neurontin and Oxycontin for the pain, he reported that "he is still in enough pain, that it's hard for him to do chores around the house that need to be done." As part of the treatment plan for the back pain, Dr. Tschirgi noted that Manuel would be "doing pain management with Dr. Rezba and to some extent, with me [referring to Dr. Tschirgi]."

Meanwhile, Manuel filed his disability claim on June 12, 2003, maintaining that he had become disabled on March 15, 2003, from back and leg pain. The SSA denied the claim initially and on reconsideration. Manuel then requested a hearing, which was held on May 18, 2004. Before the hearing, Manuel's medical files were fowarded to Dr. Luc Vinh for a Physical Residual Functional Capacity Assessment. Vinh found that Manuel could occasionally lift or carry twenty pounds, that he could frequently lift or carry ten pounds, that he could stand or walk about six hours in an eight-hour workday, that he could sit for about six hours in an eight-hour workday, that he had unlimited push/pull abilities, and that he was capable of light work.

A vocational expert (VE) testified at the hearing. The ALJ asked the VE whether there

4

were positions available in significant numbers in the national economy for a man of Manuel's age, education and work experience, who has the capacity to do light work, unskilled with a sit-stand option. The VE testified that such a person could work in an assembly line, particularly small products assembly in a bench-type setting; could do dispatch work, such as a router; or could work as a cashier in the simplest of cashiering positions.

The ALJ ultimately found that Manuel suffers from insulin dependent diabetes and degenerative disc disease of the lumbar spine, both "severe" impairments; that Manuel's impairments do not meet or medically equal any of the impairments specifically set out in SSA regulations; that Manuel is unable to perform any of his past relevant work; that Manuel lacks the capacity to perform a full range of light work; and that Manuel, however, is capable of performing "a significant number of jobs in the national economy," including assembler of small parts, dispatcher, and cashier II. The ALJ also found that Manuel was not "totally credible," citing Manuel's admission to his treating physician that he was not complying with his diabetic regiment or taking his prescribed medicine for his depression. The ALJ granted greater weight to Dr. Tschirgi's opinion concerning Manuel's diabetes because she, unlike Dr. Rezba, was treating Manuel for diabetes. The ALJ also found that Manuel's "noncompliance has caused the claimant's medical condition to continue to be chronic."

Based on these findings, the ALJ denied benefits, and after the Appeals Council denied Manuel's request for review, the Commissioner adopted the decision. Manuel appealed, and the court referred the matter to the Magistrate Judge, who found that the ALJ's decision was not supported by substantial evidence and recommended that the court reverse the ALJ's decision and remand the case solely for calculation of benefits.

## II.

The Magistrate Judge found that the ALJ's decision did not provide a full assessment of Manuel's condition because the ALJ focused on Manuel's diabetic condition and did not make findings concerning the severity or chronic nature of Manuel's degenerative disc disease and lower back pain. This court agrees that the ALJ did not fully assess Manuel's condition. Although substantial evidence supports the ALJ's decision that Manuel's diabetes is not disabling,[2] the evidence also establishes that Manuel has a severe back impairment, and the ALJ could have concluded that Manuel is unable to perform a narrow range of light work. The ALJ, however, did not address the effects of this impairment or make any evidentiary findings concerning it.[3]

The record before the court does not conclusively establish that Manuel is incapable of performing other work that exists in significant numbers in the national economy. Rather than reverse the decision, the court will remand for further consideration at the fifth step of the

---

[2]Dr. Tschirgi and Dr. Rezba had conflicting opinions concerning Manuel's diabetic condition. Dr. Tschirgi stated that Manuel's diabetes was not contributing to his disability. On the other hand, Dr. Rezba questioned whether Manuel's diabetes or his degenerative disc disease caused his disability. In the face of conflicting, supportable views, it was the domain of the ALJ to assess credibility and to discern which view more closely mirrored reality. See Richardson v. Perales, 402 U.S. 389, 399 (1971) ("[In] the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict."). The ALJ assessed credibility in a reasonable fashion, and we are not permitted to impose our own view of the evidence.

[3]The ALJ did find that Manuel's degenerative disc disease of the lumbar spine is a "severe" impairment and that Manuel is unable to perform any of his past relevant work. Therefore, the proper step of the sequential evaluation for reconsideration is the fifth and final step because the ALJ did not determine whether Manuel's degenerative disc disease prevented him from performing other work that exists in significant numbers in the national economy.

6

sequential evaluation. Therefore, further consideration premised on a complete evaluation of Manuel's degenerative disc disease is in order.

ENTER: This 13th day of October 2005.

_____
UNITED STATES DISTRICT JUDGE